UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE L. THOMPSON,

    Plaintiff,

v.                                                                        Case No. 1:13-cv-321
                                                                   Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
                                    /

## OPINION

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI).

        Plaintiff was born on January 1, 1981 (AR 238).[1] She alleged a disability onset date of December 24, 2003 (AR 238).[2] Plaintiff completed 11th grade and had previous employment as a grocery store cashier and a dietary aide at a hospital (AR 65-66, 84, 243). Plaintiff identified her disabling conditions as transverse myelitis, demyelination plaque, and possible multiple sclerosis (AR 242). As a result of these conditions, plaintiff stated that she has muscle and nerve problems, gets a stiff back and cannot lift more than five pounds (AR 242). The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits on June 3, 2011

---

[1] Citations to the administrative record will be referenced as (AR "page #").

[2] Plaintiff filed the present applications for DIB and SSI on December 2, 2008 (AR 37). Plaintiff had filed two previous applications for DIB. The first application was filed on April 12, 2005, and denied at the initial level on July 22, 2005 (AR 37). The second application was filed on April 5, 2006, and denied at the initial level on August 30, 2006 (AR 37). Plaintiff did not appeal these earlier denials of her DIB claim.

(AR 37-48). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

2

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of December 24, 2003 and that she met the insured status requirements under the Social Security Act through December 31, 2008 (AR 39). Second, the ALJ found that plaintiff had severe impairments of: borderline I.Q.; mood disorder, secondary to medical condition; chronic headaches; and myalgias and fibromyalgia affecting the large muscle groups of the back, neck, shoulders, arms, and legs (AR 39). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 41). Specifically, plaintiff did not meet the requirements of Listings 12.02 (organic mental disorders) and 12.04 (affective disorders) (AR 41).

The ALJ decided at the fourth step that:

> . . . claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except stand and/or walk with normal breaks for a total of at least two hours in an eight-hour workday; sit with normal breaks for a total of about six hours in an eight-hour workday; never climb ladders, ropes, and scaffolds; occasionally stoop, kneel, crouch, and crawl; frequently balance and climb ramps and stairs; avoid concentrated exposure to extreme cold; limited to simple, routine tasks and no more that [sic] simple decisions and judgments.

(AR 41). At the fourth step, the ALJ also found that plaintiff was unable to perform any past relevant work (AR 46).

At the fifth step, the ALJ determined that plaintiff could perform a range of light work in the national economy (AR 47-48). Representative occupations included: packager (2,500 reduced

4

range of light, unskilled jobs); general office helper (4,500 reduced range of light, unskilled jobs); production inspector (2,000 reduced range of light, unskilled jobs); bench assembler (2,700 sedentary, unskilled jobs); packager (2,600 sedentary, unskilled jobs); and surveillance monitor (1,600 sedentary, unskilled jobs). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from December 24, 2003 through June 3, 2011 (the date of the decision) (AR 47-48).

### III. ANALYSIS

Plaintiff raised three issues on appeal:

> **A. In evaluating Ms. Thompson's mental residual functional capacity (RFC), the ALJ improperly discounted the opinion of Roger Riley, M.A., a licensed counselor, who examined Ms. Thompson and testified at the hearing, particularly where, as here, the Agency's own experts' findings are entirely consistent with those of Riley.**

Plaintiff contends that the ALJ improperly discounted Mr. Riley's opinion regarding the extent of plaintiff's mental impairments. Mr. Riley, has a master's degree in counseling and guidance, and is a state licensed professional counselor (AR 92). He prepared a report (AR 903-11) and testified at plaintiff's administrative hearing (AR 92-102). Riley testified that he gave plaintiff an IQ test in January 2009, that her score was in the bottom 50th percentile, and that this score indicated borderline mentally retardation (AR 92-94). While Riley did not state plaintiff's IQ score on the record at the hearing, his report reflected a Full Scale IQ Score of 76 (AR 906). According to Riley, plaintiff's performance on the test "reflected a level of insight into knowledge and understanding of tasks was [sic] poor at best" which "would make it difficult to learn any job or continue to maintain a job" (AR 94). Riley testified that based on his testing, plaintiff lacked the

5

memory to follow through with a task and could forget her instructions within 20 to 30 minutes (AR 96).

Riley noted that plaintiff's Global Assessment of Functioning ("GAF")scores ranged from 40 to 48 (AR 94-95). The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness. American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), pp. 32, 34.[3] Plaintiff's GAF scores fell within two ranges on the continuum, the 31 to 40 range and the 41to 50 range . GAF scores within the 31 to 40 range and indicates "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." *Id.* at p. 34. A GAF score within the 41 to 50 range indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.*

The ALJ evaluated Mr. Riley's report and testimony as follows:

> Claimant underwent I.Q. testing in February 2009 with Dr. Riley. He believed her scores to be valid. She attained a Verbal I.Q. score of 78; a Performance I.Q. score of 79; and a Full Scale I.Q. score of 79. Dr. Riley recommended comprehensive medical evaluation, monitoring her medical conditions, consider

---

[3] The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning," and "may be particularly useful in tracking the clinical progress of individuals in global terms." *Id.* at 32. The GAF scale ranges from 100 to 1. *Id.* at 34. At the high end of the scale, a person with a GAF score of 100 to 91 has "no symptoms." *Id.* At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death." *Id.*

re-evaluating her for rehabilitation, remedial education, comprehensive medication review, and assist claimant with some type of health care program (Ex 56F).

* * *

With respect to Dr. Roger Riley's testimony, he provided his credentials, and said he administered testing in January 2009. The summary of the tests indicated claimant is borderline mentally retarded. His review of her work history indicated that she was assigned to several different tasks including cashiering, cutting vegetables, and serving trays to patients. She was given more than simple routine tasks to perform. She did not stay on her past jobs because of the difficulty she experienced. Dr. Riley stated that, in general, cashier jobs are mostly automatic and she would have to learn the buttons. She would not have to calculate the money. She should have been able to do that but did not stay on that task. The Wechsler Adult Intelligence Scale (WAIS) demonstrated her scores fall below 50th percentile. This consistently indicated she has difficulty in staying focused. She would have difficulty maintaining any job.

In assessing Dr. Roger Riley's testimony, he basically concluded that claimant can only work in a sheltered workshop but his opinion is based on a misleading report because it seems to describe the disease process in her case. Dr. Riley is not a medical doctor, but a psychologist. With no firm diagnosis of transverse myelitis, this disease process, if any, is not in the medical record and is nowhere clearly stated except as fibromyalgia or chronic pain. If the doctors are unable to say what the disease process is, Dr. Riley is certainly in no position to do so.

Dr. Riley's report does not hold up under scrutiny. He ignores the fact that she worked in two different jobs, and one was full-time for a while, in the competitive market and only quit when she got sick. She testified that although they did not consider her full-time, she was working 40 hours per week, until her hours were reduced. Dr. Riley indicated that she is not going to succeed in any job other than a sheltered workshop setting. However, the undersigned notes that his report has a detailed paragraph of medical discussion that is far beyond his expertise. He was asked about his use of this information and he replied it was merely copied from the file supplied to him. Dr. Riley referenced transverse myelitis, fibromyalgia, spinal cyst, headaches, and some hair loss (Ex 56F). Dr. Riley testified that he relied on a medical discussion [sic] from Ms. Kropf (Ex 64F). However, Ms. Kropf is not a physician but an occupational therapist. She is not an acceptable source for medical diagnoses or opinions regarding whether claimant can perform work as a dietary aid [sic] or other occupations (Ex 64F). Given the one visit with claimant and the unsubstantiated medical records, Dr. Riley's opinions, in part, is not given significant weight.

7

(AR 40, 45).

As a preliminary matter, the Court notes that the ALJ's decision erroneously referred to Mr. Riley as "Dr. Riley" and erroneously stated that plaintiff's Full Scale IQ Score was 79 rather than 76. While these are errors, the Court considers them harmless. The ALJ discounted Mr. Riley's opinion because Riley relied on plaintiff's physical impairments which were outside of his area of expertise. The same critique, i.e., lack of expertise in physical impairments, would apply whether Mr. Riley was a psychologist with a doctorate or a counselor with a masters degree. With respect to the IQ score, plaintiff does not claim that her score, whether it be 76 or 79, meets the requirement to be found disabled under the Listing 12.05 (intellectual disability). "No principle of administrative law or common sense requires [a reviewing court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989).

Plaintiff contends that the ALJ improperly rejected Mr. Riley's opinions. The Court disagrees. Mr. Riley did not treat plaintiff and was not an acceptable medical source. Rather, as a counselor, Mr. Riley's opinion was that of an "other source." 20 C.F.R. § 404.1513(d) and 416.913(d). Even if Riley was an acceptable medical source, the ALJ would not be required to give "good reasons" for the weight assigned his opinion, because this articulation requirement does not apply when an ALJ rejects the report of a non-treating medical source. *See Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir.2007).

In SSR 06-3p, the Commissioner addressed the ALJ's evaluation of opinions from "other sources" such as Mr. Riley.[4] In SSR 06-3p, the Commissioner acknowledged that sources other than acceptable medical sources, such as nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists, have increasingly assumed a greater percentage of treatment and evaluation functions previously handled primarily by physicians and psychologists, and that their opinions should be considered:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06-3p.

The ALJ considered Mr. Riley's opinion as required by the regulations and SSR 06-3p. The ALJ could discount Mr. Riley's opinion for the reasons stated in his decision. Accordingly, plaintiff's claim of error will be denied.

> **B. Contrary to Agency policy, the ALJ failed to translate his finding that Ms. Thompson had moderate limitations in concentration, persistence, and pace, into the detailed, function-by-function analysis required for a proper RFC determination.**

Plaintiff contends that the ALJ's RFC failed to adequately provide for her "moderate" limitation in concentration, persistence and pace. The ALJ addressed this limitation as

---

[4] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1).

part of his determination of whether plaintiff met the requirements of Listings 12.02 and 12.04. In evaluating whether plaintiff's condition met or equaled these Listings, the ALJ followed the Psychiatric Review Technique ("PRT"). The PRT is a procedure for determining whether a claimant has a medically determinable impairment, whether the impairment is severe, and whether the impairment satisfies a listing. *See* 20 C.F.R. §§ 404.1520a(b)(1), d(1)-(2), and 416.920a(b)(1), (d)(1)-(2). In determining whether plaintiff met the "B" criteria of these listed impairments, the ALJ rated plaintiff's degree of functional limitation in four broad areas. The ALJ found that plaintiff was "moderately impaired" in the broad area of concentration, persistence or pace (AR 40-41), noting that "[s]he needs reminders to take medicine and call for refills" and that "[s]he does not handle stress well" (AR 41). At issue is whether the ALJ's finding of "moderately impaired" concentration, persistence or pace that should have been included in the RFC.

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. §§ 404.1545 and 416.945. RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *see Cohen v. Secretary of Department of Health and Human Services*, 964 F.2d 524, 530 (6th Cir. 1992). "The RFC assessment must address both the remaining exertional and nonexertional capacities of the individual." SSR 96-8p ("Exertional and Nonexertional Functions").

While the ALJ included this functional limitation in the PRT, it was not necessary for him to include this limitation in either the RFC or the hypothetical posed to the vocational expert. The Sixth Circuit has rejected an argument similar to that raised by plaintiff. In *Furst v.*

10

*Commissioner of Social Security*, No. 99-3581, 2000 WL 282909 (6th Cir. March 12, 2000), the ALJ posed a hypothetical question to the vocational expert that included the requirement of "a good ability to maintain attention, to concentrate, and to understand, remember and carrying out simple job instructions." *Furst*, 2000 WL 282909 at * 2.  The plaintiff contended that the hypothetical was inconsistent with the Psychiatric Review Technique Form ("PRTF") completed by the ALJ, because the PRTF indicated that she "often" had deficiencies of pace, persistence or concentration. The Sixth Circuit found the plaintiff's argument unavailing

> because the ALJ's findings regarding the PRTF are solely relevant to the issues of whether [the claimant] had a severe impairment and whether her condition was equivalent to any of the impairments that are listed in Appendix A to the regulations. See Social Security Ruling 96-8p, 1996 WL 374184, at *4 (S.S.A. July 2, 1996).

*Id.*

> As explained in 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A.:
>
> Individuals who have an impairment with a level of severity which does not meet the criteria of the listings for mental disorders may or may not have the residual functional capacity (RFC) which would enable them to engage in substantial gainful work activity. The determination of mental RFC is crucial to the evaluation of an individual's capacity to engage in substantial gainful work activity when the criteria of the listings for mental disorders are not met or equaled but the impairment is nevertheless severe.
>
> RFC may be defined as a multidimensional description of the work-related abilities which an individual retains in spite of medical impairments.  RFC complements the criteria in paragraphs B and C of the listings for mental disorders by requiring consideration of an expanded list of work-related capacities which may be impaired by mental disorder when the impairment is severe but does not meet or equal a listed mental disorder.

While the PRT findings and the RFC determination serve different purposes, in this case the ALJ appears to have incorporated the PRT findings into the RFC stating:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional

> capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

(AR 41).

As plaintiff observes, the RFC does not state that plaintiff has "moderate" limitations in concentration, persistence and pace. Rather, the RFC limits plaintiff "to simple, routine tasks and no more that [sic] simple decisions and judgments" (AR 41). Plaintiff contends that this RFC is too "streamlined" to properly address her limitations. The Court disagrees. The RFC limiting plaintiff to "simple, routine tasks" and "simple decisions and judgments" accurately reflected her limitations. These terms are in essence shorthand for the types of duties involved in unskilled work, which is defined as follows:

> Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs.

20 C.F.R. §§ 404.1568(a) and 416.968(a).

> We believe that the ALJ's qualification that [the claimant] was limited to simple, repetitive, and routine tasks, within the category of light work, simply means that [the claimant] is limited to unskilled light work. Indeed, the Social Security Administration regulations define unskilled work as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time" and gives the examples of "handling, feeding and offbearing" - in other words, simple, repetitive tasks. 20 C.F.R. § 404.1568(a).

12

*Allison v. Apfel*, No. 99-4090, 2000 WL 1276950 at *4 (6th Cir. Aug. 30, 2000). *See, e.g., Smith v. Halter*, 307 F.3d 377, 378-79 (6th Cir. 2001) (Sixth Circuit determined that a hypothetical question limiting the claimant to jobs that are "routine and low stress, and do not involve intense interpersonal confrontations, high quotas, unprotected heights, or operation of dangerous machinery" appropriately addressed the limitations of the claimant who "often" suffered problems with concentration, persistence or pace resulting in the failure to complete tasks in a timely manner).

Plaintiff relies on *Ealy v. Commissioner of Social Security*, 594 F.3d 504, 516 (6th Cir. 2010) to support her claim that the ALJ's RFC was deficient. In *Ealy*, the Sixth Circuit rejected an ALJ's "streamlined" hypothetical question which limited the claimant "to simple, repetitive tasks and instructions in non-public settings," where the ALJ found that the claimant's RFC limited the claimant's "ability to sustain attention to complete simple repetitive tasks to [two-hour] segments over an eight-hour day where speed was not critical." Given the rather specific RFC assessment, the *Ealy* court rejected that ALJ's hypothetical question because it omitted "speed - and pace - based restrictions." *Id.* However, the present case is distinguishable from *Ealy*. Unlike *Ealy*, the ALJ did not find that plaintiff was subject to a specific speed and pace restriction (such as working two hour segments over an eight-hour day where speed was not critical). Rather, the ALJ found that plaintiff had only moderate limitations with regard to concentration, persistence or pace (AR 41). Such limitations could be accommodated by performing "simple, routine tasks" which involved "simple decisions and judgments" (i.e., unskilled work). *See, e.g.*, *Smith*, 307 F.3d at 378-79; *Allison*, 2000 WL 1276950 at *4. Accordingly, plaintiff's claim of error will be denied.

> **C. The ALJ also failed to include all of Ms. Thompson's physical limitation on her ability to use her hands effectively for work related activities in the RFC determination.**

Plaintiff contends that the ALJ erred because he failed to include a physical limitation related to the use of her hands and failed to evaluate the opinion of her physical therapist, Ms. Kropf (AR 964-67). Ms. Kropf evaluated plaintiff on July 30, 2009 and August 3, 2009 and, based upon that evaluation, completed a "Physical Residual Functional Capacity Questionnaire" on August 4, 2009 (AR 964-67). This questionnaire listed, among other things, plaintiff's diagnosis as a back ache and that she could occasionally lift up to 20 pounds (AR 964-67). Contrary to plaintiff's stated issue of error, Ms. Kropf indicated that plaintiff did *not* have significant limitations in reaching, handling or fingering (AR 967). Furthermore, Ms. Kropf stated that while plaintiff was unable to function as a dietary aide, she was capable of performing low stress jobs (AR 965).

The ALJ addressed Ms. Kropf's evaluation of plaintiff as follows:

> In July 2009, claimant underwent physical evaluation with Occupational Therapist, Dawn Kropf. The undersigned notes that claimant scored 3/5 positive trials during the maximum voluntary effort tests indicating that she may have given less than consistent effort. Notwithstanding likelihood of deconditioning, claimant appeared to give satisfactory effort with functional testing. Ms. Kropf indicated she was limited by shortness of breath, fatigue, complaints of dizziness, lightheaded, and pain. Nevertheless, she was able to lift 30 pounds, sit up to one hour at any given time, stand up to 30 minutes at any given time, and walk up to 20 minutes at any given time. She performed nearly all the positions (Ex 63F).

(AR 44).

Like Mr. Riley, Ms. Kropf was an "other source" whose opinion was subject to consideration. *See* SSR 06-3p. The record reflects that the ALJ considered her opinions as expressed in the Physical RFC Questionnaire. Plaintiff's claim of error will be denied.

14

**IV. CONCLUSION**

The ALJ's determination is supported by substantial evidence. Accordingly, the Commissioner's decision will be affirmed pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.


Dated: March 25, 2014                                              /s/ Hugh W. Brenneman, Jr.
                                                                   HUGH W. BRENNEMAN, JR.
                                                                   United States Magistrate Judge